IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JON BRUNENKANT** | * | |
| *Plaintiff*, | * | |
| v. | * | **Civil Case No. 1:24-cv-02375-JMC** |
| **PUBLIC STORAGE OPERATING COMPANY,** *et al.* | * | |
| | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jon Brunenkant, filed this lawsuit against Defendants Public Storage and Public Storage Operating Company ("PS Operating"), on August 15, 2024, asserting a gross negligence claim stemming from alleged damage to property Plaintiff kept in a storage unit leased from Defendants. (ECF No. 1). Plaintiff then filed an Amended Complaint on November 22, 2024, which named PSSC, Inc. as a defendant, removed Public Storage as a party, and added a claim for failure to disclose and for fraudulent concealment. (ECF No. 26). Thereafter, the Court denied the Defendants' Motion to Dismiss on April 30, 2025. (ECF No. 36). Defendants filed a counterclaim asserting a breach of contract claim against Plaintiff on July 21, 2025 (ECF No. 44), which Plaintiff answered on August 4, 2025 (ECF No. 45). Then, on August 13, 2025, Plaintiff filed his own counterclaim (the "Reply-Counterclaim"), asserting a breach of contract claim and an additional fraudulent concealment claim. (ECF No. 46). Presently before the Court is Defendants' Motion to Strike Plaintiff's Reply-Counterclaim. (ECF No. 47). The Motion has been fully briefed (ECF Nos. 47, 48, 52). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendants' Motion to Strike will be denied.

I.  **BACKGROUND**

Plaintiff rented a self-storage unit located at 16001 Frederick Road in Rockville, Maryland. (ECF No. 26 at 1).[1] According to Plaintiff, he leased the unit from PS Operating. *Id.* at 2. As noted at the Motion to Dismiss phase, it is unclear whether PSSC, Inc. was a party to any rental agreement. *See id.*; ECF No. 32-3 at 3; ECF No. 36 at n.2. The lease was formalized by a written rental agreement around September 24, 2016.[2] (ECF No. 26 at 2). According to the Complaint, the storage facility flooded around April 1, 2019, at which point Plaintiff was told to contact PS Operating with respect to his storage unit. *Id.* at 4. Plaintiff alleges that when he went to the storage facility to inspect his unit, he discovered evidence of water damage and spoke with a PS Operating Manager, who reassured him that PS Operating was taking steps to ensure the facility would be waterproofed and that the items he stored there would be fully insured. *Id.* The manager further indicated that the basement "would be more protective of antiques and other wood furniture." *Id.* Plaintiff's items were purportedly stored at the basement level. *Id.*

In August of 2021, Plaintiff was again notified of an issue with his storage unit. *Id.* at 4-5. When he went to inspect the unit in September of 2021, he learned "the entire basement level had been completely flooded with standing water more than a foot high for an extended time." *Id.* According to Plaintiff, everything in his unit, including his antique wooden furniture and rugs, was completely ruined. Thereafter, Plaintiff filed the present case. *Id.*

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. Where a document is not electronically stamped, the citation is instead to the number at the bottom of the page.

[2] At the Motion to Dismiss stage, this Court held that "there exist legitimate questions as to the authenticity of the contract and the terms of the parties' agreement" after consideration of the purported terms set forth in Plaintiff's Complaint. (ECF No. 36 at 8).

Defendants' Counterclaim offers additional facts. (ECF No. 44). According to Defendants, Plaintiff agreed to make monthly rent in exchange for the storage unit, with rent due on the first of each month. *Id.* at 3. They allege Plaintiff made his monthly payments until June 18, 2024, and made a partial payment on September 10, 2024. *Id.* They assert that Plaintiff continues to occupy the self-storage unit but has failed to make any other payments, totaling to $6,074.15 in unpaid rent, insurance premiums, and fees. *Id.* Defendants' Counterclaim asserts one count of a breach of contract. *Id.*

Plaintiff answered the Counterclaim and filed the Reply-Counterclaim, which asserts a breach of contract count and another fraudulent concealment count. (ECF No. 45). Under the Breach of Contract Count, the Reply-Counterclaim emphasizes that Defendants "represented their storage facility as safe and secure" and the "'as-is' dry condition of the storage unit leased to Plaintiff at the initial time of contracting and each monthly renewal was and would remain the condition of the storage unit leased to Plaintiff." *Id.* at 4. "As a result of Defendants' breach of contractual obligations, Plaintiff suffered damages in the form of monthly rental and insurance premiums charged to Plaintiff for a service not provided by Defendants." *Id.* Under the Fraudulent Concealment Count, Plaintiff asserts that Defendants failed to disclose that the facility was not completely waterproof and concealed that his storage unit was prone to flooding. *Id.* at 5. In the Amended Complaint, Plaintiff's Fraudulent Concealment Count rests on PSCC's purported "failure to disclose that Plaintiff's items were not fully insured under the policy." (ECF No. 26 at 7-8).

## II.  DISCUSSION

Defendants urge this Court to strike Plaintiff's Reply-Counterclaim, as the Federal Rules of Civil Procedure do not recognize counterclaims to counterclaims. (ECF No. 47 at 1).

Defendants argue that the proper way for a Plaintiff to assert a new claim is to seek leave to amend the Complaint. *See Mack v. Food Lion, LLC*, No. 5:23-CV-00327-M, 2025 WL 1934524, at *4 (E.D.N.C. July 15, 2025) (construing a plaintiff's counterclaim as a motion for leave to amend the complaint).

It is true that courts have construed purported counterclaims by plaintiffs as motions for leave to amend. *See, e.g.*, *Baker v. Borg Warner Morse Tec, Inc.*, Civil Action No. 3:11-505, 2012 WL 195011, at *3 (S.D.W.V. Jan. 23, 2012). In *Baker*, a represented plaintiff filed a rely to a defendant's counterclaim and sought leave to file a counterclaim. *Id.* at *1. The court there considered different approaches to handling the unique scenario in which a plaintiff files a counterclaim in response to the defendant's counterclaim. *See id.* Similar to the argument Plaintiff in this case advances, *Baker* recognized that some courts authorize a counterclaim in reply "when it is a compulsory reply to a permissible counterclaim." *Id.* at *2. It noted that one court reasoned,

> If the plaintiff has a claim arising from the same transaction as the one involved in the defendant's counterclaim—a claim that would constitute a compulsory counterclaim under Rule 13(a)—the plaintiff must assert it in the reply or risk being barred from bringing a later action on it. In this context, a counterclaim in the plaintiff's reply to the defendant's counterclaim seems entirely appropriate.

*Id.* (quoting 5 Wright, et. al., *Federal Practice and Procedure § 1188* (3d ed. 2011)). The *Baker* court also recognized other courts anticipate "allowing a counterclaim in reply may result in a reply to the counterclaim in reply, which [would] create a procedural nightmare." *Id.* Therefore, they reason construing the counterclaim in reply as an amendment to the complaint better serves clarity and practicality. *Id.* (citing *Century Pac., Inc., v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 213 n.3 (S.D.N.Y) ("[A] reply counterclaim is to be treated as a motion to amend the complaint under Rule 15(a)."). Ultimately, the court in *Baker* concluded that an amended

4

complaint was the proper solution to the plaintiff's proposed counterclaim in *Baker*, as the "the parties disagree[d] over the compulsory and/or permissive nature of the counterclaims." *Id.*

Plaintiff relies on *Casero v. McNulty* in support of the proposition that Rule 13(a) permits a reply-counterclaim.[3]  *Casero v. McNulty*, Civil Case No. SAG-17-2205, 2019 WL 5309601, at *5 (D. Md. Oct. 21, 2019).  There, the plaintiffs filed a complaint seeking a declaratory judgment regarding a property line dispute. *Id.* at *1.  Prior to the *Casero* case, the defendants brought suit[4] regarding the same property boundary at issue in *Casero*. *Id.* at *2.  In the defendants' original suit, the Court granted partial summary judgment on liability for the defendants and thereafter denied the *Casero* plaintiff's motion to file a counterclaim. *Id.* Following that ruling, the plaintiff filed the *Casero* complaint. *Id.*

Accordingly, this Court's analysis focused on whether the *Casero* complaint could survive the defendant's motion to dismiss on grounds of collateral estoppel, abstention, and the compulsory counterclaim rules. *Id.* at *4. The Court applied the four factor test to determine whether a party's counterclaim is compulsory: (1) whether the issues of law and fact are "largely the same," (2) whether res judicata would bar a subsequent suit on the party's counterclaim absent Rule 13(a); (3) whether "substantially the same evidence" would support or refute both claims; and (4) whether there is "any logical relationship" between the claims. *Id.* at *5 (quoting *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988)). The Court there concluded each factor weighed in favor of a compulsory counterclaim, emphasizing that the suits relied upon "substantially the same evidence." *Id.*  Accordingly, the Court concluded that the *Casero* complaint raised compulsory counterclaims with respect to the *McNulty*. *Id.* at *7. Therefore, dismissal was the proper remedy

---

[3] The Court does not agree that *Casero v. McNulty* stands for such a rule. Rather, it illustrates the preclusive effect failure to raise compulsory claims has on future litigation. *Casero*, 2019 WL 5309601, at *7.  In that regard, *Casero* provides guidance on the present Motion.
[4] *McNulty v. Casero*, 479 F. Supp. 3d 200 (D. Md. 2020).

5

because "a party's failure to raise a compulsory counterclaim means the party is barred from making any attempt to raise that claim in subsequent litigation." *Id.*

As Plaintiff accurately notes, Defendants do not dispute whether the facts and issues raised in Plaintiff's Counterclaim are directly related to the facts and issues Defendants raised in their counterclaim. (ECF No. 48 at 2). Based on the Court's review of the pleadings, it seems as though Plaintiff's counterclaim would be compulsory with respect to those raised in the Defendants' counterclaim.

To be sure, the Court considers the same four-factor test that proved dispositive in *Casero*.[5] First, as in *Casero*, the issues of law and fact in the Plaintiff's Counterclaim are "largely the same" as those in the Defendants'. Indeed, both claims seek to recover for the purported breach of the same contract. (ECF Nos. 44, 46). Both sides require a determination of the obligations arising from the contract, like whether Defendants were obligated to disclose certain information during the course of the lease, whether Plaintiff was obligated to pay after the alleged flooding, and whether Defendants properly charged Plaintiff under the contract. Therefore, the first factor weights in favor of a compulsory counterclaim.

Second, res judicata would almost certainly bar the Plaintiff's Reply-Counterclaim. Like in *Casero*, Maryland's res judicata law governs, as the Amended Complaint (ECF No. 26) invokes diversity jurisdiction. *Casero*, 2019 WL 5309601, at *6. In Maryland, re judicata bars litigation of a claim when (1) the parties in both actions are identical to, or in privity with, the parties in the earlier litigation; (2) the subsequent claim is "identical to that determined or that which could have

---

[5] Defendants urge that *Casero* is inapposite because "*Casero v. McNulty* is about compulsory counterclaims." (ECF No. 52 at 2). But Defendants miss the point. The compulsory nature of the claims brought in *Casero* proved fatal to the plaintiff's complaint there. It is for that reason that this Court must consider whether the claims raised by Plaintiff's counterclaim are permissive or compulsory. Of course, if they are compulsory, should Plaintiff fail to include them as claims in the instant case, he will lose the opportunity to litigate them in the future. *See Casero*, 2019 WL 5309601, at *8.

been raised and determined in the prior litigation; and (3) the earlier litigation reached a final judgment on the merits. *Williams v. Long*, 558 F. Supp. 2d 601, 605 (D. Md. 2008) (quoting *R & D 2001 LLC v. Rice*, 402 Md. 648, 663 (2008)). The Court finds that Plaintiff's counterclaims would likely be barred by res judicata if the Defendants' counterclaim were to reach a resolution on the merits. Of course, the parties to the claims are identical, and the issues of law and fact are extremely close based on the reasoning above.

Third, as in *Casero*, the claims seem to rely on substantially similar evidence. Here, both parties would rely on the contract, evidence of the conduct relating to it, and statements made during formation and performance. No argument has been made to the contrary.

Finally, there is a logical connection between the claims. Plaintiff's Reply-Counterclaim asserting that he does not owe Defendants any payments based on his allegations of a contract breach and fraudulent concealment is a direct response to the Defendants' Counterclaim asserting that Plaintiff breached his obligations under the contract. Therefore, the Court finds that the Plaintiff's Counterclaims are compulsory.

Accordingly, in the Court's view, the instant motion can be best described as a dispute over the proper procedural mechanism through which Plaintiff must assert his claims. As Plaintiff stated, "Defendants' sole concern is that Plaintiff's Counterclaim should have included a separate or additional request seeking leave of the Court to allow the Counterclaim to be accepted as an amendment to the pending Amended Complaint." (ECF No. 48 at 2). Indeed, Defendants urge that their "Motion is based on a simple proposition" that Plaintiff "has but one mechanism to assert claims in this case: through his complaint…if Plaintiff wishes to assert additional claims, he needs to move for leave of court to amend his complaint, since he has already amended his complaint once as a matter of right." (ECF No. 52 at 1).

Based on the analysis above and considering that neither party disputes whether the substantive claims belong in the present lawsuit, Defendants' proposition is an oversimplification of the nuance afforded by the Federal Rules of Civil Procedure. *E.g.*, *Baker*, 2012 WL 195011, at *3. Moreover, efficiency would not be served by striking Plaintiff's Counterclaim, requiring that he file a motion for leave to amend, granting it (as the Court would do[6]), and then waiting for Plaintiff to file a Second Amended Complaint for the case to proceed.[7] Therefore, in recognition of the unique procedural posture of the Plaintiff's Reply-Counterclaim, Defendants' Motion to Strike is denied.

### III.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike is DENIED. Defendants shall file an answer within twenty-one (21) days of the entry of this Order. There shall be no other claims filed without a request for leave from the Court.

Dated: October 20, 2025                                           /s/
                                                                            J. Mark Coulson
                                                                            United States Magistrate Judge

---

[6] Of course, "[u]nder Rule 15(a), the district court 'has broad discretion concerning motions to amend pleadings . . .'" *Macsherry v. Sparrows Point, LLC*, No. ELH-15-22, 2016 WL 8669914, at *8 (D. Md. Oct. 28, 2016) (quoting *Booth v. Maryland*, 337 F. App'x 301, 312 (4th Cir. 2009) (per curiam)) (other citation omitted); *see also Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) ("Leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.").

[7] The Court recognizes the procedural concerns raised in *Baker*. *Id.* at *2 (cautioning that "allowing a counterclaim in reply may result in a reply to the counterclaim in reply, which [would] create a procedural nightmare."). At this juncture, such an outcome nevertheless better serves efficiency than granting Defendants' Motion.