**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JON BRUNENKANT** | * | |
| *Plaintiff,* | * | |
| v. | * | **Civil Case No. 1:24-cv-02375-JMC** |
| **PUBLIC STORAGE OPERATING COMPANY,** *et al.* | * | |
| | * | |
| *Defendants.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff/Counter-Defendant Jon Brunenkant ("Brunenkant" or "Plaintiff") initiated the present lawsuit on August 15, 2024 against Public Storage and Public Storage Operating Company ("PS Operating"), asserting a gross negligence claim[1] stemming from alleged damage to property Plaintiff kept in a storage unit leased from Defendants/Counter-Plaintiffs. (ECF No. 1). Plaintiff amended his complaint on November 22, 2024, naming PSSC, Inc. ("PSSC") as a defendant, removing Public Storage as a party, and adding a claim for failure to disclose and fraudulent concealment. (ECF No. 26). Defendants/Counter-Plaintiffs PSCC and PS Operating (together, "Public Storage") filed a counterclaim for breach of contract for failure to make payments for storage, to which Mr. Brunenkant responded with a reply-counterclaim, then adding a claim for breach of contract. (ECF Nos. 44, 46). Before the Court are several motions: (1) Public Storage's Motion for Summary Judgment as to all of Plaintiff's claims (ECF No. 75); (2) Brunenkant's Motion for Partial Summary Judgment (ECF No. 78); and (3) Public Storage's Motion to Strike

---

[1] In Plaintiff's Opposition brief, he concedes that summary judgment is appropriate on his gross negligence claim. Accordingly, the Court GRANTS summary judgment on the issue of gross negligence and judgment is entered on behalf of Defendants/Counter-Plaintiffs on this count.

the affidavit of Larry Klein (ECF No. 82). The motions are fully briefed. (ECF Nos. 75, 78, 81, 82, 83, 85, 87, 88, 89) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, Public Storage's Motion to Strike will be GRANTED, Public Storage's Operating's Motion for Summary Judgment will be GRANTED, and Plaintiff's Motion for Partial Summary Judgment will be DENIED.

## I.    BACKGROUND[2]

The instant case arises from the alleged damage to Brunenkant's personal property that he stored in Unit No. 1088 ("Unit 1088") at the Public Storage facility located at 16001 Frederick Road, Rockville, Maryland (the "facility").  (ECF No. 26).  The case involves two central questions: one concerning the rights under the operative Rental Agreement that the parties agree would have been signed, and one concerning the rights under the Insurance Addendum, if enforceable. (ECF Nos. 75, 78, 81, 82, 83, 85, 87, 88, 89).

### i.    Evidence of the Public Storage Agreements

Brunenkant first contracted with Public Storage by way of two Rental Agreements on September 24, 2016.  (ECF Nos. 75-4, 75-5, 75-7).  One such agreement, signed by both parties, is for Unit 1206.  (ECF No. 75-4).  The other, which is unsigned, is for Unit 1088. The record shows an Insurance Addendum for Unit 1206, which elects $5,000 in coverage, with a $15.00 monthly premium payment.  (ECF No. 75-5).  Whether an enforceable Insurance Addendum for items stored in Unit 1088 also exists, and if so, in what amount, is the subject of much dispute. (ECF No. 83).  From what the Court can discern of the record, neither party was able to produce a copy of an executed Insurance Addendum for Unit 1088.  However, the parties do not seem to

---

[2] The Background below reflects the Court's understanding of an unclear record. The disputes subject to the instant motion frequently turn on the interpretation of facts.  As such, the Court will indicate where facts are disputed as necessary.

dispute that had one been executed, it would have been Public Storage's practice to use the form agreement reflected in the signed Insurance Addendum for Unit 1206. (ECF No. 75-5). Whether Mr. Brunenkant agreed to each of the Insurance Addendum's terms with respect to Unit 1088 is disputed.

There is, however, undisputed circumstantial evidence from which a reasonable juror could conclude that the rental agreements and insurance addenda for both units were exactly the same. *Compare* (Unit 1206 Insurance Addendum, ECF No. 75-5) *and* (Transaction Report for Unit 1088, ECF No. 75-10). First, the rental of both units (which appear to be identical in size) began at the same time. *See* (ECF Nos. 75-6, 75-10) (showing a move-in date of September 24, 2016 for both units). Second, with respect to Unit 1206, the records show a $15.00 monthly premium was paid, corresponding to the policy's $15.00 monthly premium for insurance coverage limit described in the Insurance Addendum in the amount of $5,000.00, until Unit 1206 was vacated on December 2, 2019. (ECF No. 75-5). A transaction log from September 24, 2016 to September 4, 2024 shows payments made and various late notices issued in connection with Unit 1088 for approximately eight years, which included a history of $15.00 monthly payments, the same amount charged for the $5,000.00 Insurance Addendum with regard to the Unit 1206. (ECF No. 75-10).

Notwithstanding the above evidence tending to show that the rental agreements and insurance addenda are identical, Brunenkant nonetheless disputes whether there were additional clauses that have not been produced that applied only to Brunenkant's Unit 1088 Rental Agreement. *See* (ECF Nos. 83, 75-4, 75-7). Brunenkant offers no specific evidence in support of that assertion. In fact, after thorough review, the Court cannot find any particular instance in which Brunenkant even testified what those "additional clauses" would be. Turning to the Insurance Addendum for Unit 1088, Brunenkant advances a theory that Public Storage agreed to insure

3

$90,000.00 worth of items based on the language seen in both the form Rental Agreements and

the form Insurance Addendums.  (ECF No. 83). The operative language in both agreements is as

follows:

> 3.5.2. **Total Value Limit of $5,000.** The total value of all property stored in Your
> Space **MAY NOT EXCEED $5,000.00.**
> 3.5.3. **No Valuables**.  You will not store valuables in Your Space or the Facility,
> including heirlooms or precious, highly valuable, or irreplaceable property…
> …
> 4.1. . . . [t]o the extent permitted by Maryland law, **our liability for Loss from any
> cause will not exceed a total of $5,000.00**.
> …
> 6. **STORE AT YOUR SOLE RISK; INSURANCE**…
>
> 6.1 You may purchase the insurance that we offer as a convenience to you, but you
> are **NOT** required to purchase it.  **IF** you elect to purchase that insurance, your
> monthly payment will include an additional amount for the coverage you
> select…(ECF No. 75-4 at 3; 75-7 at 3) (emphasis in original).
>
> 20. **ENTIRE AGREEMENT; TIME.**  This Rental Agreement and any written
> addenda, any notices by us, and any rules and regulations posted at the Facility are
> the entire agreement between you and us, and supersede all prior agreements. We
> make no representations, warranties, or agreements not fully set forth in this Rental
> Agreement and have not authorized anyone else to do so. Except for changes
> described in paragraphs 2.2 (changes of rental terms), 14 (our rules and regulations
> posted at the Facility), 18.7 (changes to arbitration provision), and 18.8 (your ability
> to opt out of the arbitration provision), this Rental Agreement may only be amended
> by a writing signed by both parties. Time is of the essence in performing all
> obligations of this Rental Agreement.

(ECF No. 75-4 at 2-3, 5; ECF No. 75-7 at 2-3, 5)[3] (emphasis in original).   The corresponding

Insurance Addendum for Unit 1206 states the following:

> As set forth in Paragraph 6 of the Lease/Rental Agreement,[4] all personal property
> is stored by Occupant…at Occupant's sole risk. Occupant is solely responsible for
> insuring his own goods and understands that Owner…**will not** purchase insurance
> on the Occupant's personal property and that Occupant is obligated under the terms
> of this Lease/Rental Agreement to insure his own goods.

---

[3] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers
provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the
Court is referring to the page number of the PDF.
[4] Paragraph 6 is described immediately above.

(ECF No. 75-5 at 1) (emphasis in original). Subsequently, the occupant, here Brunenkant, is asked to acknowledge the above disclosure before selecting the insurance coverage limit. *Id.* Then, the Insurance Addendum allows the occupant to select $3,000.00, $4,000.00, or a maximum of $5,000.00 in coverage by initialing under the occupant's selection. *See id.*

Those agreements notwithstanding, Brunenkant urges that Public Storage's liability under the Rental Agreement is $5,000.00, even in the absence of purchasing insurance. *See* (ECF No. 75-3 at 8). He posits that the Insurance Addendum acts as a "supplemental insurance agreement" that would add coverage for any items stored in excess of $5,000.00. *Id.* ("No. My understanding was—is that the—the total value for which Public Storage was liable, absent supplemental insurance or agreement, would be $5,000.00."). Accordingly, he avers that when he would have signed the Insurance Addendum for Unit 1088, he would not have selected any particular coverage amount; rather, he would have affixed an addendum of his own that itemized the items to be stored with their estimated value. (ECF No. 76-5-3 at 15-16). However, neither Brunenkant, nor Public Storage, were able to obtain an original copy of Brunenkant's purported addendum or any other clauses he said would have been added into both agreements. *See id.* at 13. In place of an original copy of the alleged addendum affixed to his insurance agreement for Unit 1088—or any other evidence for that matter—Brunenkant created a list for this litigation based on his memory of the items stored and their approximate value during discovery, and advances that list as an adequate surrogate for the alleged custom addendum to the insurance agreement greatly expanding the purported coverage. *See id.*

          ii.     Brunenkant's Use of Unit 1088 and Pipe Burst Event

Brunenkant used the storage units for different purposes. In Unit 1206, Brunenkant stored various papers he estimated to be valued below $5,000. (ECF No. 75-3 at 8). As such, he believed

"insurance probably wasn't necessary at all on [that] particular unit." *Id.* In contrast, he stored various personal items in Unit 1088 he estimates have a value of approximately $90,000.00. (ECF No. 75-3 at 10). Brunenkant used Unit 1088 to store two Persian rugs that belonged to him and various other items that belonged to his sister. *Id.*

Around August 8, 2021, a water pipe burst in the basement-level of Public Storage's Facility, thereby causing the alleged damage to items stored in Unit 1088. (ECF No. 75-11 at 2). The August 8, 2021, pipe-burst event was the first instance in which any flooding affected customer property at that Facility. *Id.* Brunenkant now brings claims for failure to disclose/fraudulent concealment and breach of contract for failure to preserve an "as-is dry" condition for Unit 1088. (ECF Nos. 26, 46). Public Storage brings a claim for breach of contract based on Brunenkant's outstanding payments on his Unit 1088 and his unwillingness to surrender his keys and vacate the premises. (ECF No. 44).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998). "[I]n the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *Angelini v. Balt. Police Dep't*, 464 F. Supp. 3d 756, 776 (D. Md. 2020).

## III.    ANALYSIS

### A.    Motion to Strike

The Court will first consider the Motion to Strike the affidavit of Mr. Larry Klein (ECF No. 78-5). In support of its motion, Public Storage argues (1) the affidavit must be stricken under Rule 37(c) because his opinions were never disclosed and (2) because his opinions are inadmissible. (ECF No. 82). As an initial matter, the Court is not persuaded to strike his affidavit on the basis of Public Storage's evidentiary concerns. Of course, "[t]he court and the parties have great flexibility with regard to the evidence that may be used on a [summary judgment] proceeding." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538 (4th Cir. 2015) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2721 (3d ed. 1998)). "The court may consider materials that would themselves be admissible at trial, and the content or substance of otherwise inadmissible materials

where 'the party submitting the evidence show[s] that it will be possible to put the information ... into an admissible form.'" *Id.* (quoting 11 James W. Moore et al., Moore's Federal Practice § 56.91[2] (3d ed. 2015)). Put simply, the operative question is whether the information submitted has a pathway to admissibility, not whether it is admissible in its current form. *See id.* The affidavit sets forths what Mr. Klein views to be various applicable standards and whether Public Storage complied with those standards. Even if not ultimately admissible at trial, the Court declines to disregard the affidavit for that reason at the summary judgment posture. *Humphreys*, 790 F.3d at 538.

The Court is persuaded, however, that Brunenkant's failure to timely disclose the opinions warrants striking the affidavit. Fed. R. Civ. P. 26(a)(2)(B) requires parties to disclose the identity of, and certain information concerning, expert witnesses. Similarly, Rule 26(a)(2)(A) requires a party to disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." As such, when an expert witness has been "retained or specially employed to provide expert testimony in the case," the party must also serve a report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the data or other information considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Indeed, these reports must be "'written in a manner that reflects the testimony of the expert witness is expected to give at trial.'" *Campbell v. United States*, 470 F. App'x 153, 156 (4th Cir. 2012) (quoting *Sharpe v. U.S.*, 230 F.R.D. 452, 458 (E.D. Va. 2005)).

Moreover, Rule 26(e)(1) requires a party to supplement its experts' reports when that party learns of new information. Fed. R. Civ. P. 26(e)(1). Failure to do so, without substantial justification, bars the use of that information to supply evidence on a motion or at trial. *See id.*; *see also* Fed. R. Civ. P. 37(c)(1).

Rule 37 indicates that when "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." As such, in the absence of substantial justification or a finding of harmlessness, Rule 37(c) imposes an automatic sanction requiring the Court to exclude an expert for failure to meet Rule 26(a)'s requirements. *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 n.2 (4th Cir. 2003) ("The Rule 37(c) advisory committee notes emphasize that the automatic sanction of exclusion provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence") (internal quotation marks and citation omitted); *SSS Enterprises, Inc. v. Nova Petrolium Realty LLC*, 533 F.App'x 321, 3245 (4th Cir. 2013); *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 503 (D. Md. 1997); *Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc.*, 534 F. Supp. 2d 616, 622 (D. Md. 2008).

To that end, the parties agree on the basic facts: Brunenkant provided Public Storage a general notice on November 3, 2025, that he retained Mr. Klein as an expert witness. (ECF No. 85 at 1). On December 5, 2025, Brunenkant filed an unopposed Motion to Extend the Discovery Schedule (ECF No. 65), which the Court approved on December 8, 2025 (ECF No. 66). Under that Scheduling Order, the discovery deadline was extended until February 4, 2026. All previous deadlines remained in effect. *See id.* The deadlines for Brunenkant's Rule 26(a)(2) disclosures,

rebuttal disclosures, and 26(e)(2) disclosures were September 18, 2025, October 15, 2025, and October 22, 2025, respectively.  (ECF No. 42).

Brunenkant points to the five *Southern States* factors in support of his position that a general November 3, 2025, notice satisfies his obligations under the Federal Rules of Civil Procedure.  (ECF No. 85 at 3).  In *Southern States*, the Fourth Circuit explained that five factors assist Courts in evaluating whether a nondisclosure was substantially justified under Rule 37(c).  *Southern States*, 318 F.3d at 596-97.  Those factors include "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence."  *See id.* at 597.

Here, contrary to Brunenkant's urging, the factors weigh heavily in favor of excluding the report.  Brunenkant failed to provide any Rule 26(a)(2)(B) report for Mr. Klein.  (ECF Nos. 85, 89).  Without any such disclosure, Defendants were unable to prepare for Mr. Klein's opinions prior to seeing them for the first time upon the summary judgment filings.[5]  Plaintiff had ample

---

[5] Brunenkant urges that because he provided a general notice that identified Mr. Klein "as his insurance expert and disclosed that [he] would examine documents and information obtained in discovery from Defendants in preparing his report and opinion" that he has satisfied all disclosure requirements and there can be no issue of surprise.  (ECF No. 85 at 8).  The Court disagrees.  The Federal Rules of Civil Procedure require Brunenkant, as he should well know as a practicing attorney, to provide a written report if the witness was retained specifically for trial testimony.  Indeed, Fed. R. Civ. P. 26(a)(2)(b) provides:

(B) *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
   (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
   (ii) the facts or data considered by the witness in forming them;
   (iii) any exhibits that will be used to summarize or support them;
   (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
   (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
   (vi) a statement of the compensation to be paid for the study and testimony in the case.

opportunity to seek a modification of the scheduling order under Rule 16(b)(4). He even sought a modification on December 5, 2025, but when he did so, his motion failed to contemplate his Rule 26(a) requirements and whether an extension would be necessary for his expert disclosures. Brunenkant claims he was unable to comply with his disclosure obligations because "Defendants delayed production" of their own discovery. (ECF No. 85 at 2). However, such an argument does not excuse his failure to move for an extension, nor does it circumvent his Local Rule 104.3 obligations to proceed with discovery despite the existence of any disputes.[6] *See* Loc. R. 104.3 (D. Md. 2025). As such, the surprise factor weighs against Brunenkant. *Southern States*, 318 F.3d at 597. Indeed, discovery has now been closed for greater than two months, and the parties have filed dispositive motions. Thus, Public Storage's ability to cure the surprise weighs against Brunenkant. *Id.* Although Brunenkant insists that "any prejudice can be cured, and the trial will not be disrupted," he provides no explanation as to how that can be the case. To address this issue, the Court would have to re-open discovery, thereby causing great disruption to the parties' ability to proceed with trial. While the Court understands that Brunenkant finds Mr. Klein's testimony important, mere importance to Mr. Brunenkant is insufficient to overcome the issues of surprise, the prejudice to Public Storage, Public Storage's inability to cure Brunenkant's nondisclosure, and Brunenkant's failure to explain his delay. *See id.*; *see also* Loc. R. 104.3.

Therefore, the Court will strike his affidavit, and the Defendants' Motion to Strike (ECF No. 82) is GRANTED. The Court will not consider Mr. Klein's affidavit, nor may Plaintiff rely upon Mr. Klein as an expert should the case reach trial posture.

B.    **Public Storage's Motion for Summary Judgment**

---

[6] The Court addressed this very issue in a Memorandum Opinion and Order addressing a discovery dispute on November 4, 2025. (ECF No. 59).

>    i.    *Public Storage is Entitled to Summary Judgment on Plaintiff's Fraudulent Concealment Claim*

The Court now turns to the Motions for Summary Judgment. Public Storage argues it is entitled to judgment as a matter of law on Count II of the Amended Complaint, which is titled, "Failure to Disclose and Fraudulent Concealment." (ECF No. 26 at 7). It appears as though Count II is predicated on the general notion that Public Storage had a duty to disclose to Mr. Brunenkant that he could not store items in a value greater than was permitted under the rental agreement and insurance policy, but that Public Storage failed to do so with the intent to deceive and cause harm to Plaintiff.[7] *See id.* at 7-8. "It is not obvious whether Mr. Brunenkant is attempting to assert a claim against Public Storage for an alleged violation of Md. Code Ann. Ins. § 10-806 (specifying what a storage owner must disclose regarding, inter alia, availability of insurance), or for fraudulently concealing the information required to be disclosed by § 10-806, or both." (ECF No. 75-1 at 11). Brunenkant's opposition does not make clear whether he attempts to assert a unique claim under an assumed right of action under the Insurance Code. *See* (ECF No. 83 at 7-8). As such, the Court will address each in turn.

>    1.    Md. Code Ann., Ins. § 10-806 Does Not Confer a Private Right of Action, and to the extend Plaintiff May Seek to Assert One, Summary Judgment is Proper as a Matter of Law.

"A private right of action allows an individual to bring an action in his or her personal capacity to enforce a legal claim." *Aleti v. Metro. Balt., LLC*, 479 Md. 696, 723, 279 A.3d 905 (2022) (citing *State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 517, 92 A.3d 400 (2014)). As Public Storage avers, a private right of action does not exist simply because a statute

---

[7] Under this Count, Plaintiff does not appear to argue that Public Storage fraudulently concealed a propensity for Unit 1088 to flood, likely because the undisputed evidence is that Public Storage had never experienced a burst pipe or flooding of Unit 1088 prior to the incident that allegedly damaged Plaintiff's property.

was violated and a person was harmed by the violation; rather, the question of whether a private right of action exists is a matter of statutory construction. *See id.*

In *Aleti*, the then Court of Appeals of Maryland recognized the three factors set forth in *Baker v. Montgomery County*. *Id.* (citing 427 Md. 691, 708–09, 50 A.3d 1112 (2012) and *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)). The three factors relevant to determining whether there existed legislative intent to create a private right of action are:

    (1) Is the plaintiff one of the class for whose special benefit the statute was enacted?
    (2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?
    (3) Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

*Id.* at 724. *Baker* made clear that "[t]he central inquiry remains whether [the legislative body] intended to create, either expressly or by implication, a private cause of action." *Baker*, 427 Md. at 710. Turning to the first factor, "[i]f a statute's language provides a right to a particular class of persons, there is a strong inference that the legislature intended the statute to carry an implied cause of action. Conversely, that inference becomes attenuated when the statute is framed as a 'general prohibition or a command' to a governmental entity or other group or confers a generalized benefit."

Moreover, "[w]hen faced with a statutory provision, 'the starting point for any issue of statutory interpretation ... is the language of the statute itself.'" *Redeemed Christian Church of God (Victory Temple) Bowie, Maryland v. Prince George's County, Maryland*, 17 F.4th 497, 508 (4th Cir. 2021) (quoting *D.B. v. Cardall*, 826 F.3d 721, 734 (4th Cir. 2016)) (alteration in original). A statute "means what it says." *Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016); *see United States v. Cohen*, 63 F.4th 250, 2023 WL 2564405, at *1 (4th Cir. Mar. 20, 2023). "'[A]bsent ambiguity or a clearly expressed legislative intent to the contrary,'" courts apply the "plain meaning" of the statute. *U.S. v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010) (quoting *United*

13

*States v. Bell*, 5 F.3d 64, 68 (4th Cir. 1993)). This is "'determined by reference to its words' 'ordinary meaning at the time of the statute's enactment.'" *Abdelshafi*, 592 F.3d at 607 (quoting *United States v. Simmons*, 247 F.3d 118, 122 (4th Cir. 2001)).

In *Carter v. Huntington Title & Escrow, LLC*, 420 Md. 605, 624, 24 A.3d 722 (2011), the court concluded that the Insurance Article imbues the Maryland Insurance Administration with exclusive jurisdiction over purely statutory claims, such as the one at issue there.[8]  To that end, the court noted, "we find indicia suggesting that the Legislature evinced a preference for primary jurisdiction as to [purely statutory claims]."  *Id.* at 626.  The court also noted certain relevant penalty provisions support such a conclusion, including those that begin with phrases like "[i]f the Commissioner finds" or "[i]f the Commissioner believes."  *Id.*  The court held that such phrases imply that the Maryland Insurance Administration, and not the courts, "should take the first cut at such claims."  *Id.*

Here, *Carter* is dispositive.  Section 10-806 applies to a self-storage producer's pre-sale disclosures.  Public Storage correctly points to the same operative language present in § 10-806's remedy provision (§ 10-810), which states, "[t]he Commissioner may suspend, revoke, or refuse to renew a limited lines license issued under this subtitle. . . if the self-storage producer . . . failed to provide the disclosures required under § 10-806 of this subtitle[.]" *See* Md. Code. Ann. Ins. § 10-810(3).  Thus, following *Carter*, the statutory language supports a finding that any violation of § 10-806 is purely statutory, and Legislature intended to confer exclusive jurisdiction to the Maryland Insurance Administration, not the courts.  Plaintiff points to no case law to the contrary.

---

[8] Md. Code Ann., Ins. § 27-216.

14

Therefore, to any extent Plaintiff seeks to bring a cause of action specifically under Md. Code. Ann. Ins. § 10-806, Defendant's Motion for Summary Judgment (ECF No. 75) is GRANTED.

> 2.    Plaintiff's Fraudulent Concealment Claim Fails as a Matter of Law Because there is No Evidence of Intent to Deceive or Knowledge of a Potential Leak

In order to prevail on a common law fraudulent concealment claim, a plaintiff must prove: (1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment. *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 138, 916 A.2d 257 (2007) (quoting *Green v. H & R Block*, 355 Md. 488, 525, 735 A.2d 1039, 1059 (1999)). Indeed, fraudulent concealment "is any statement or other conduct which prevents another from acquiring knowledge of a fact, such as diverting the attention of a prospective buyer from a defect which otherwise, he would have observed. *Id.* (citations omitted). "[I]n such cases, the affirmative act on the part of the defendant must be more than mere silence; there must be some act intended to exclude suspicion and prevent injury, or there must be a duty on the part of the defendant to disclose such facts, if known." *Id.* (citations omitted). Here, the Court is satisfied that Public Storage had a duty to disclose material facts to its customers. However, such a duty is one of contract rather than a fiduciary relationship.[9]  Moreover, and dispositive here, Mr. Brunenkant

---

[9] Brunenkant points to *Hogan v. Md. State Dental Ass'n*, 155 Md. App. 556, 843 A.2d 902 (Md. Ct. App. 2003) in support of his position that Public Storage owed him fiduciary duties. (ECF No. 83 at 7).  Brunenkant's reliance on *Hogan* is unavailing, however, because the case neither instructs on the facts, nor on the relevant definitions.  In other instances, Maryland law has made clear that a fiduciary relationship does not arise at every statutory obligation from one party to others.  As discussed in Section III.B.i.1, the statutory provision here is one that does not confer a private right of action and imposes a purely statutory duty upon the self-storage insurers.  "[A] fiduciary duty is, in general, a duty to act for the benefit of another on matters within the scope of the parties' relationship." *Plank v. Cherneski*, 469 Md. 548, 601, 231 A.3d 436 (2020).  "Some fiduciary relationships arise as a matter of law, such as the relation between attorney and client, between principal and agent, or between a trustee and the beneficiary of a trust. They

must show that Public Storage took an affirmative action beyond silence to conceal the fact that the items stored in Unit 1088 were not fully insured in the amount of $90,000.00 with an intent to deceive. *See id.*

"Absent a fiduciary relationship, this Court has held that a plaintiff seeking to establish fraudulent concealment must prove that the defendant took affirmative action to conceal the cause of action and that the plaintiff could not have discovered the cause of action despite the exercise of reasonable diligence." *Lloyd*, 397 Md. at 139. Here, Brunenkant contracted with Public Storage to rent Units 1206 and 1088. Brunenkant points to no evidence showing some affirmative action on Public Storage's behalf to conceal that the items in Unit 1088 would not be fully insured under the Rental Agreement and Insurance Addendum, nor does he even plead it. (ECF No. 26). Even assuming that Brunenkant did refuse to initial any portion of the Insurance Addendum in favor of providing an itemized list of possessions (only two of which he claims he owned) totaling $90,000.00, he cannot demonstrate any genuine issue of material fact showing Public Storage engaged in any act to conceal their coverage limits. Nor does Brunenkant point to any evidence showing that Public Storage acted with an intent to deceive. Even if there is evidence of some affirmative action beyond silence, Brunenkant produced no evidence that Public Storage intended to deceive him such that he would be induced to store $90,000.00 worth of property in violation of their own policies. (ECF No. 75-8 at 4).

In support of his argument Brunenkant points to nothing other than his own speculation underlying Public Storage's intent. (ECF No. 83). While there is evidence to the contrary, including language in Plaintiff's own rental agreement for Unit 1206 and Unit 1088, (ECF Nos. 75-4, 75-5, 75-7, 75-8 at 4), Brunenkant's speculation is insufficient evidence to create a genuine

---

may also arise from the terms of a contract or from less formal dealings that create the elements of such a relationship. *Id.* (quoting Restatement (Third) of Torts: Liab. For Econ. Harm § 16 (Am. Law Inst. 2020) ("Third Restatement")).

issue of material fact concerning an intent to deceive. *Heckman*, 962 F. Supp. 2d at 799–800 (quoting *Drewitt*, 999 F.2d at 778–79); *see also Deans*, 152 F.3d at 330–31. For example, Plaintiff's Rental Agreements state at Section 3.5.2., "**Total Value Limit of $5,000.** The total value of all property stored in Your Space **MAY NOT EXCEED $5,000.00.**" (ECF Nos. 75-4 at 2, 75-7 at 2) (emphasis in original).[10] Section 4.1 of the same indicates, "…[t]o the extent permitted by Maryland law, **our liability for Loss from any cause will not exceed a total of $5,000.00**." (ECF Nos. 75-4 at 3, 75-7 at 3) (emphasis in original). Similarly, the form Insurance Addendum requires an acknowledgement that the "[o]ccupant is solely responsible for insuring his own goods and understands that [Public Storage] **will not** purchase insurance on the Occupant's personal property…" before permitting the occupant to select an insurance coverage amount, with up to a maximum of $5,000.00 coverage and a corresponding $15.00 monthly premium payment. (ECF No. 75-5 at 1) (emphasis in original). In light of the strong circumstantial evidence supporting the notion that Brunenkant paid the $15.00 monthly premium payments in accordance with an agreement to opt for $5,000.00 in coverage, taken with the express language of the agreements, no reasonable juror could find that Public Storage acted with any intent to deceive Plaintiff into believing they would insure $90,000.00 worth of property. *Deans*, 152 F.3d at 330–31.

Ultimately, there is no evidence that Public Storage took any affirmative action to conceal its insurance policy or that it did so with intent to deceive Mr. Brunenkant. Therefore, Public Storage's Motion for Summary Judgment (ECF No. 75) is GRANTED with respect to Count II.

      ii.     *Public Storage is Entitled to Summary Judgment on Brunenkant's Breach of Contract Claim Because There is No Evidence of an "As-Is Dry*

---

[10] Plaintiff's continuing violation based on a month-to-month contract theory is equally unavailing absent any evidence of an intent to deceive or some affirmative action beyond silence to conceal the insurance policy's meaning. *See* (ECF No. 83 at 10). Merely stating that Public Storage failed to update him as to the status of his insurance policy between 2016 and the date of his losses does not create a genuine issue concerning an intent to deceive him.

*Condition" Clause or Prior Flooding Such that a Defect Should Have Been Disclosed.*

Public Storage next seeks summary judgment on Plaintiff's claim for breach of contract, which he raised in his reply-counterclaim. (ECF No. 46). The premise of Brunenkant's breach of contract claim is as follows: "Defendnats [*sic*] represented their storage facility as safe and secure and represented that the 'As-Is' dry condition of the storage unit leased to Plaintiff at the initial time of contracting and each monthly renewal was and would remain the condition of the storage unit leased to Plaintiff." (ECF No. 46 at 4). Plaintiff alleges that under the Rental Agreement, Public Storage had "an implied duty to disclose material latent defects such as flooding which it breached." *Id.* "The [b]asement level of the [Facility] where the unit leased to Plaintiff is located, is prone to flooding but this was never disclosed to Plaintiff." *Id.* "To the contrary[,] the storage unit was expressly represented by Defendants to Plaintiffs as a secure, safe and dry storage unit and it was waterproof and protected against flooding." *Id.*

"Leases are contracts and, as such, are to be construed by application of the well established rules of contract interpretation." *Middlebrook Tech, LLC v. Moore*, 157 Md.App. 40, 65, 849 A.2d 63, 778 (2004) (citing *Sy–Lene of Washington, Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 829 A.2d 540 (2003)). Under Maryland law, the interpretation of a contract is "ordinarily a question of law for the court." *Grimes v. Gouldmann*, 232 Md. App. 230, 235, 157 A.3d 331, 335 (2017). "Maryland courts interpreting written contracts have long abided by the law of objective contract interpretation, which specifies that 'clear and unambiguous language' in an agreement 'will not give way to what the parties thought the agreement meant or was intended to mean.'" *Urban Growth Prop. Ltd. P'ship v. One W. Balt. St. Assocs. LLC*, No. 882, Sept. Term, 2015, 2017 WL 526559, at \*5 (Md. Ct. Spec. App. Feb. 9, 2017) (citation omitted). Courts presume that the parties meant what they stated in an unambiguous contract, without regard to

18

what the parties to the contract subjectively intended or personally thought it meant. *See Martz v. Day Development Co., L.C.*, 35 F.4th 220, 225 (4th Cir. 2022); *Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 51, 73 A.3d 224 (2013); *Dennis v. Fire & Police Employees' Ret. Sys.*, 390 Md. 639, 656, 890 A.2d 737, 747 (2006); *see also Hartford Acc. & Indem. Co. v. Scarlett Harbor Assoc. Ltd. P'ship*, 109 Md. App. 217, 291, 674 A.2d 106, 142 (1996) ("Where the language of a contract is clear, there is no room for construction; it must be presumed that the parties meant what they expressed."), *aff'd*, 346 Md. 122, 695 A.2d 153 (1997); *Cochran v. Norkunas*, 398 Md. 1, 17, 919 A.2d 700 (2007) ("Under the objective theory of contracts, [courts] look at what a reasonably prudent person in the same position would have understood as to the meaning of the agreement."). A contract is not ambiguous merely because the parties do not agree on its meaning. *Fultz v. Shaffer*, 111 Md. App. 278, 299, 681 A.2d 568, 578 (1996). A contract is ambiguous only "'if, to a reasonable person, the language used is susceptible of more than one meaning or is of doubtful meaning.'" *Martz v. Day Dev. Co., L.C.*, 35 F.4th 220, 225 (4th Cir. 2022) (citation omitted).

1.    <u>Public Storage is Entitled to Summary Judgment Because there is No Evidence Public Storage Knew Unit 1088 was Prone to Flooding and Failed to Disclose such Knowledge</u>

To begin, the undisputed evidence shows that Public Storage had no prior knowledge that the Facility was prone to pipe-burst events or the possibility that some of Mr. Brunenkant's and his sister's items might sustain water damage. (ECF No. 75-11). Indeed, the pipe burst event in 2019 was the first instance in which the Public Storage Facility dealt with a flooding event. *See id.* Thus, there is no basis upon which any reasonable person could conclude that Public Storage breached the rental agreement by way of a purported breach of an "as-is dry condition" for failing

to disclose that Unit 1088 was "prone to flooding."   Brunenkant cannot now create a genuine issue of material fact by way of speculative arguments that contradict his own testimony.

To be sure, where, as here, a disclosure term does not exist in a contract, courts have recognized a duty to disclose that is "independent of the contract" because it "arises from the general duty of good faith and fair dealings" in other causes of action.  *Cf. Architectural Sys., Inc. v. Gilbane Gldg. Co.*, 779 F.Supp. 820, 822 (D. Md. 1991) (recognizing an independent duty to disclose in the context of a misrepresentation claim).  Even absent a fiduciary relationship, "[a] duty of good faith and fair dealing has traditionally been read into a contract where there exists a relationship of trust and confidence between the parties."  *Id.* (collecting cases). In *Architectural Systems, Inc.*, this Court recognized as much under a negligent misrepresentation claim.  *See id.* The Court there dismissed the claim because the plaintiff "alleged no facts to suggest that such a relationship existed."  *Id.*; *see also Len Stoler, Inc. v. Nat'l Auto Care Corp.*, Civil Action No. CCB–08–288, 2009 WL 321642, at *4 (D. Md. Feb. 9, 2009) (concluding that there was no duty to disclose when the contract was an arm's length transaction between two corporations).

Here, Brunenkant has not brought a claim for negligent misrepresentation. However, even the notion of an implied duty to disclose can apply here, there can be no basis upon which Public Storage violated a duty to disclose when the undisputed evidence shows no pipe burst even occurred prior to 2021 at the Facility.  Thus, no reasonable jury could conclude that Public Storage violated a duty to disclose by failing to warn Brunenkant that the unit was prone to water damage. Therefore, summary judgment is proper on that basis alone.

<div style="margin-left: 3em;">

2.      <u>There is No Evidence of a Representation that Unit 1088 would Remain Dry for the Duration of the Lease Period, and the Unambiguous Terms in the Parties' Agreements Precludes Any Such Representation</u>

</div>

Further, while neither party was able to produce an original, executed copy of the Rental Agreement for Unit 1088, Brunenkant does not deny that he executed the Rental Agreement; rather, he disputes whether the parties added some kind of term representing that the Unit would remain dry and free of any damage that might arise in the event of a pipe burst. (ECF No. 83 at 11-12). However, this argument appears only in his opposition brief and reply-counterclaim. (ECF Nos. 46, 83). Plaintiff has produced no evidence of any such term reflected in any contract. After thorough review, the Court cannot find any instance in Plaintiff's deposition or briefs in which he states what specific terms or obligations would be missing under the Rental Agreement provided.

Similarly, where Brunenkant disputes his interpretation of several of the terms shown for both Rental Agreements and whether he agreed to all terms in the contract, he does not deny that they would have existed in whatever form Rental Agreement he did execute for Unit 1088. *See* (ECF No. 75-3 at 8) (disputing the legal impact of the terms in both rental agreements and insurance addendums). In fact, Brunenkant indicated he would have signed the form Rental Agreement now available for the Court's review, notwithstanding the arguments he made in his brief suggesting not all terms would take legal effect. *See, e.g.*, (ECF No. 75-3 at 11) ("Q: Okay. So I'm going to show you—we can call this [ECF No. 75-7]. And I'll submit to you this is a—an unsigned copy of an agreement for 1088. Do you have any reason to believe that the document, which was provided in discovery, with the same terms as 1206, that that document would be something that – that you would have signed then? A: Yes. I—my guess is, putting I here, and I don't have the full document in front of me, but, you know….No, I have no reason to believe that

this was not the agreement that I signed at the end. The fact that the boxes don't have my initials typed in there would seem to indicate that they were not agreed to.[11]").

Moreover, the contracts produced include express language precluding the possibility of extraneous provisions not included in the Rental Agreements. (ECF Nos. 75-4 at 5, 75-7 at 5). Review of the terms (ECF No. 75-7) make clear, in an unambiguous nature,

> 3.5.2. **Total Value Limit of $5,000.** The total value of all property stored in Your Space **MAY NOT EXCEED $5,000.00.**
> 3.5.3. **No Valuables**.  You will not store valuables in Your Space or the Facility, including heirlooms or precious, highly valuable, or irreplaceable property…
> …
> 4.1. . . . [t]o the extent permitted by Maryland law, **our liability for Loss from any cause will not exceed a total of $5,000.00**.
> …
> 6. **STORE AT YOUR SOLE RISK; INSURANCE**…
>
> 6.1 You may purchase the insurance that we offer as a convenience to you, but you are **NOT** required to purchase it.  **IF** you elect to purchase that insurance, your monthly payment will include an additional amount for the coverage you select…(ECF No. 75-4 at 3; 75-7 at 3) (emphasis in original).
>
> 20. **ENTIRE AGREEMENT; TIME.**  This Rental Agreement and any written addenda, any notices by us, and any rules and regulations posted at the Facility are the entire agreement between you and us, and supersede all prior agreements. We make no representations, warranties, or agreements not fully set forth in this Rental Agreement and have not authorized anyone else to do so. Except for changes described in paragraphs 2.2 (changes of rental terms), 14 (our rules and regulations posted at the Facility), 18.7 (changes to arbitration provision), and 18.8 (your ability to opt out of the arbitration provision), this Rental Agreement may only be amended by a writing signed by both parties. Time is of the essence in performing all obligations of this Rental Agreement.

(ECF No. 75-4 at 2-3, 5; ECF No. 75-7 at 2-3, 5).  Here, the contract makes abundantly clear that (1) Public Storage will not be responsible for any damage, (2) the contract is the entire

---

[11] The evidence shows that none of the boxes asking for Mr. Brunenkant's initials to show that he "understand[s] and agree[s]" to the corresponding paragraphs are checked.  (ECF No. 75-7 at 3).  However, this is the same contract Mr. Brunenkant did not sign. As such, no initials and no signature appear on the document. *See id.*  The boxes are all initialed in the executed contract with his signature for Unit 1206.  (ECF No. 74-4).  Regardless of whether Mr. Brunenkant initialed each box in the contract for Unit 1088, the evidence shows he did ultimately sign the contract. Additionally, Mr. Brunenkant clarified that he does still agree that "it would be…logical to assume that it's the same form agreement" despite disputing whether he agreed to each term in the agreement.  (ECF No. 75-3 at 12).

agreement, and (3) there exist no additional "representations, warranties, or agreements not fully set forth in this Rental Agreement…" (ECF No. 75-4 at 5, 75-7 at 5).  The Court is satisfied that no reasonable person would find these terms in the contract or the contract as a whole ambiguous. *Martz*, 35 F.4th at 225. Nor would any reasonable jury be able to find, based on the evidence generated, that the parties executed a separate contract that has material differences than the contracts produced in discovery. As such, without any evidence beyond his unspecified speculation, Mr. Brunenkant has not generated a genuine issue of material fact concerning the rights under the Rental Agreement he testified he would have signed.

Brunenkant produces one affidavit in which he denies having signed the Rental Agreement for Unit 1088 despite making payments that correspond directly with the form Rental Agreements for approximately eight years.[12]  He rigorously argues that the record shows a genuine issue of material fact concerning the same. However, Brunenkant's affidavit contradicts his own statements in his deposition.  Under the "sham affidavit" doctrine, a plaintiff may not "survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 527 (D. Md. 2014) (quoting *Zimmerman v. Novartis Pharmaceuticals Corp.,* 287 F.R.D. 357, 362 (D. Md. 2012) (other citations omitted)). Here, the affidavit was executed on March 4, 2026, well after

---

[12] A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Critically, neither "[u]nsupported speculation," nor evidence that is "merely colorable" or "not significantly probative," can survive summary judgment. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Anderson*, 447 U.S. at 249. Here, much of Brunenkant's own testimony disputes his sole statement denying that he signed the Rental Agreement for Unit 1088. His breach of contract claim, by its very nature, is incompatible with his argument that he did not sign the Rental Agreement for Unit 1088.  As such, no reasonable jury could conclude that the statements contained in his affidavit, which are at odds with the fundamental premise of his lawsuit, shows he did not sign the Rental Agreement.  Under *Felty*, the Court finds such a statement to be no more than unsupported speculation that that is not significantly probative. *Felty*, 818 F.2d at 1128; *Anderson*, 447 U.S. at 249.

Plaintiff's deposition and fails to explain the contradictions contained therein and five days prior to filing his Motion for Summary Judgment.

Further, Brunenkant rests on evidence from which no reasonable minds could differ concerning a purported representation that the Unit would remain free from a first-time pipe burst event that caused water damage to his and his sister's items.  There is simply no evidence of any such representation. Contrary to Brunenkant's argument in his brief, no "As-Is" clause exists in the contracts the parties were able to produce, nor did Brunenkant even testify he thought there was at his deposition. (ECF No. 75-3).  The word, "dry" does not appear once in his deposition. *See id.*  Moreover, Paragraph 20 precludes the possibility that any other representation would exist that is not contained in the Rental Agreement.  (ECF No. 75-4 at 5; ECF No. 75-7 at 5).  While Brunenkant rigorously opposes the plain meaning of the Rental Agreement terms he testified he would have signed, such arguments are unavailing in the absence of material evidence. *Fultz*, 111 Md. App. at 299.

Therefore, the Court is persuaded that summary judgment is proper with respect to Brunenkant's breach of contract claim, and Public Storage's motion (ECF No. 75) is therefore GRANTED with respect to the claims against it.[13]

C.      **Brunenkant's Motion for Summary Judgment**

Brunenkant has also moved for summary judgment on Public Storage's counterclaim for breach of contract.  Specifically, Public Storage seeks to recover out-standing payments owed under the Rental Agreement and Insurance Addendum since he stopped making payments on June

---

[13] Public Storage's brief seeks summary judgment on all claims. However, Public Storage does not argue the merits of its breach of contract claim. The evidence shows some fundamental dispute as to whose responsibility it is to terminate the contract and clear out the items in the storage unit.  To that extent, Public Storage's Counterclaim presents a word-versus-word scenario. Such evidence is discussed in greater detail below.  To any extent that Public Storage seeks summary judgment on its Counterclaim, judgment is denied.

24

18, 2024. (ECF No. 44). As an initial matter, Brunenkant argues that Federal Rule of Evidence 1002 precludes consideration of the missing Insurance Addendum for Unit 1088. Based on the Court's analysis *supra* Section III.A., the Court does not find such an evidentiary argument persuasive at the summary judgment posture. There is much evidence (disputed for the first time in Brunenkant's briefs) showing that the contracts were signed, as discussed above.

> i.    *There Exist Genuine Issues of Material Fact Concerning the Rights and Enforceability under the Insurance Addendum.*

Turning to Brunenkant's remaining arguments, Brunenkant first seeks a finding that the un-produced Insurance Addendum for Unit 1088, an addendum both parties agreed existed, is unenforceable as a matter of law because the parties cannot find it. However, such an argument is not dispositive here. *E.g.*, *Taylor v. NationsBank, N.A.,* 365 Md. 166, 175, 776 A.2d 645 (2001) ("To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation."). The Court further observes that finding such an argument dispositive here would necessitate another basis upon which to grant judgment against Plaintiff on his own claims under the Rental Agreement he could not produce.

Here, the question of contract formation and the extent of enforceability concerning the Insurance Addendum for Unit 1088 differs slightly from the Rental Agreement for Unit 1088. Where Brunenkant conceded he would have executed the form Rental Agreement contract produced, his testimony differs concerning the Insurance Addendum. *See supra* Section III.B.ii. Brunenkant testified that he would not have initialed any of the possible coverage selections in the amount of $3,000.00, $4,000.00, or $5,000.00. It is undisputed, however, that each of those coverage limits corresponds to a different monthly premium charge. (ECF No. 75-6). Nor is it disputed that Mr. Brunenkant paid the monthly premium charge affiliated with a $5,000.00

25

coverage limit for roughly eight years. (ECF No. 75-10). Brunenkant's position is that rather than selecting any particular coverage limit, he instead attached an addendum itemizing his and his sister's possessions in the amount of about $90,000.00. (ECF No. 75-3 at 16).

Public Storage has produced evidence to the contrary. (ECF Nos. 75-4, 75-5, 75-7, 75-9). Based on the terms the parties agree would exist on the form Addendum and corresponding monthly premium payments, the Court is satisfied that a reasonable jury could find that Mr. Brunenkant selected $5,000.00 coverage and paid accordingly. (ECF No. 75-10). However, based on Brunenkant's statements to the contrary, such evidence is disputed. Therefore, the Court is persuaded that at the very least, the rights under the Insurance Addendum, the scope of its coverage, and what was enforceable under the agreement turn on questions of fact. Plaintiff points to no case law to the contrary. Thus, Brunenkant's Motion for Partial Summary Judgment (ECF No. 82) is DENIED.

### ii.    Brunenkant's Remaining Requests for Judgment are Denied

Brunenkant next raises several other arguments that advocate for a finding of certain general inferences which might benefit his claims but are not tied to any particular cause of action. (ECF No. 78-1 at 7). For example, Brunenkant titles Section VI of his brief, "The Rental Agreement Provision is not a Limitation of Liability," but does not address the express limitation of liability clause in the Rental Agreements. *Id.* Instead, he points to Section 3.5.2, which is a restriction on his use of the storage space. (ECF No. 75-7 at 2). Based on the Court's reasoning above, the Court finds that the Rental Agreement is clear and unambiguous under the objective theory of contracts, and the liability limit "will not exceed a total of $5,000.00" under Section 4.1. *Id.* at 3. To any extent that this argument can be tied to an existing claim in the case, Brunenkant's requested relief is DENIED.

Similarly, Brunenkant argues that the execution of the Insurance Addendums were "not routinely executed at the time of contract formation." (ECF No. 78-21 at 7). That may well be the case, and for the purposes of this motion, the Court will assume as much to be true. However, it is unclear how such an assertion connects to any claims. Therefore, Plaintiff's requested relief, if any, is DENIED with respect to argument VII. *Id.*

Finally, Plaintiff argues that he is entitled to recover lease payments. He argues he surrendered the storage unit and returned his keys, yet Public Storage continued collecting lease payments. Public Storage takes an opposing position and even asserts in its Counterclaim that Brunenkant never vacated the premises and seeks an order compelling him to do so as part of its requested relief. (ECF No. 44 at 4). Whatever the status of Brunenkant's occupation or lack thereof in Unit 1088 may be, Plaintiff does not plead any claim for breach of contract on this basis. As explored in greater detail above, Plaintiff's contract claim set forth for the first time in his reply-counterclaim seeks recovery for the violation of an alleged "as-is" dry condition, for which there is insufficient evidence to support as a matter of law. Therefore, he may not now amend the Complaint by way of his Motion for Partial Summary Judgment to add a breach of contract claim on the basis that he surrendered the Unit, yet Public Storage continued to obtain payment from him while maintaining control of his possessions. *Foster v. Summer Village Community Ass'n, Inc.*, 520 F.Supp.3d 734, 746 (D. Md. 2021) ("Plaintiff cannot amend her complaint and add new theories of relief at the summary judge stage."); *vonRosenberg v. Lawrence*, 849 F.3d 163, 166 n.1 (4th Cir. 2017) (quoting *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC,* 713 F.3d 175, 184 (4th Cir. 2013)). Therefore, Brunenkant's requested relief with respect to this theory is DENIED.

IV.    CONCLUSION

For the foregoing reasons, it is this 29th day of April 2026 ORDERED:

(1) Defendants' Motion for Summary Judgment (ECF No. 75) is GRANTED regarding all of Plaintiff's claims against Public Storage;

(2) Defendants' Motion to Strike (ECF No. 82) is GRANTED;

(3) Judgment in favor of Defendants' is GRANTED regarding all claims in Plaintiff's Amended Complaint (ECF No. 26) is DISMISSED with prejudice;

(4) Judgment in favor of Defendants is GRANTED regarding all claims and Plaintiff's Reply-Counterclaim (ECF No. 46) is DISMISSED with prejudice;

(5) Plaintiff's Motion for Partial Summary Judgment is DENIED; and

(6) The parties are hereby directed to confer and jointly inform the Court within fourteen (14) days from the date of this Memorandum Order and Opinion whether there is mutual desire to participate in another settlement conference with Judge Aslan before proceeding to schedule a trial and related dates for Public Storage's Breach of Contract claim.

Date: <u>April 29, 2026</u>

<div align="right">

_____/s/_____
J. Mark Coulson
United States Magistrate Judge

</div>