IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JON BRUNENKANT** | * | |
| *Plaintiff,* | * | |
| v. | * | **Civil Case No. 1:24-cv-02375-JMC** |
| **PUBLIC STORAGE OPERATING COMPANY,** *et al.* | * | |
| | * | |
| *Defendants.* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff/Counter-Defendant Jon Brunenkant ("Brunenkant" or "Plaintiff") initiated the present lawsuit on August 15, 2024 against Public Storage and Public Storage Operating Company ("PS Operating"), asserting a gross negligence claim[1] stemming from alleged damage to property Plaintiff kept in a storage unit leased from Defendants/Counter-Plaintiffs. (ECF No. 1). Plaintiff amended his complaint on November 22, 2024, naming PSSC, Inc. ("PSSC") as a defendant, removing Public Storage as a party, and adding a claim for failure to disclose and fraudulent concealment. (ECF No. 26). Defendants/Counter-Plaintiffs PSCC and PS Operating (together, "Public Storage") filed a counterclaim for breach of contract for failure to make payments for storage, to which Mr. Brunenkant responded with a reply-counterclaim, then adding a claim for breach of contract. (ECF Nos. 44, 46). On April 29, 2025, the Court granted Defendants' motion for summary judgment on Plaintiff's claims and denied Plaintiff's cross motion for partial summary judgment on Defendants' claims. (ECF No. 90). Before the Court is Plaintiff's Motion

---

[1] Plaintiff conceded summary judgment on his gross negligence claim, which the Court approved in its April 29, 2025 Memorandum Opinion and Order.

for Reconsideration (the "Motion") (ECF No. 91). The Motion is fully briefed. (ECF Nos. 91, 92, 93) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, the Motion is DENIED.

## I.    BACKGROUND

The instant case arises from the alleged damage to Plaintiff's personal property that he stored in Unit No. 1088 ("Unit 1088") at the Public Storage facility located at 16001 Frederick Road, Rockville, Maryland (the "Facility").  (ECF No. 26).  Plaintiff alleges his and his sister's personal property was damaged after a flood at the Facility.  *See generally id.*   At summary judgment, the Court reviewed the operative agreements underlying Plaintiff's claims, those being the Rental Agreement that the parties agree would have been signed and Insurance Addendum, if enforceable. (ECF Nos. 75, 78, 81, 82, 83, 85, 87, 88, 89).

After thorough review, the Court concluded as a matter of law that (1) Public Storage is entitled to summary judgment because there is no evidence of an intent to conceal or knowledge of a previous leak and Md. Code Ann., Ins. § 10-806 does not confer a private right of action as a matter of law; (2)  Public Storage is entitled to summary judgment on the breach of contract claim because there is no evidence of an "as-is dry condition" in any of the operative agreements such that any defect should have been disclosed; (3) genuine issues of material fact concerning the rights and enforceability of the Insurance Addendum remain; and (4) Plaintiff's remaining requests for summary judgment in his favor, formed by way of proposed statements of fact were denied for various reasons.  (ECF No. 90).

To revisit the contractual provisions at issue, the operative language in the Rental Agreements for Unit 1088 and 1206 is as follows:

> 3.5.2. **Total Value Limit of $5,000.** The total value of all property stored in Your Space **MAY NOT EXCEED $5,000.00.**

3.5.3. **No Valuables**.  You will not store valuables in Your Space or the Facility, including heirlooms or precious, highly valuable, or irreplaceable property…

…

4.1. . . . [t]o the extent permitted by Maryland law, **our liability for Loss from any cause will not exceed a total of $5,000.00**.

…

6. **STORE AT YOUR SOLE RISK; INSURANCE**…

6.1 You may purchase the insurance that we offer as a convenience to you, but you are **NOT** required to purchase it.  **IF** you elect to purchase that insurance, your monthly payment will include an additional amount for the coverage you select…(ECF No. 75-4 at 3; 75-7 at 3) (emphasis in original).

20. **ENTIRE AGREEMENT; TIME.**  This Rental Agreement and any written addenda, any notices by us, and any rules and regulations posted at the Facility are the entire agreement between you and us, and supersede all prior agreements. We make no representations, warranties, or agreements not fully set forth in this Rental Agreement and have not authorized anyone else to do so. Except for changes described in paragraphs 2.2 (changes of rental terms), 14 (our rules and regulations posted at the Facility), 18.7 (changes to arbitration provision), and 18.8 (your ability to opt out of the arbitration provision), this Rental Agreement may only be amended by a writing signed by both parties. Time is of the essence in performing all obligations of this Rental Agreement.

(ECF No. 75-4 at 2-3, 5; ECF No. 75-7 at 2-3, 5)[2] (emphasis in original). The corresponding Insurance Addendum for Unit 1206 states the following:

As set forth in Paragraph 6 of the Lease/Rental Agreement,[3] all personal property is stored by Occupant…at Occupant's sole risk. Occupant is solely responsible for insuring his own goods and understands that Owner…**will not** purchase insurance on the Occupant's personal property and that Occupant is obligated under the terms of this Lease/Rental Agreement to insure his own goods.

(ECF No. 75-5 at 1) (emphasis in original). Subsequently, the occupant, here Brunenkant, is asked to acknowledge the above disclosure before selecting the insurance coverage limit.  *Id.* Then, the Insurance Addendum allows the occupant to select $3,000.00, $4,000.00, or a maximum of $5,000.00 in coverage by initialing under the occupant's selection.  *See id.*

---

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

[3] Paragraph 6 is described immediately above.

3

## II.    STANDARD OF REVIEW

Plaintiff brings the instant motion under Federal Rule of Civil Procedure 54(b).  (ECF No. 91).  Under Rule 54(b), a "district court retains the power to reconsider and modify its interlocutory judgments … at any time prior to final judgment when such is warranted." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 256 (4th Cir. 2018). However, "the discretion afforded by Rule 54(b) is not limitless" and "is subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Id.* at 256-57. Accordingly, an interlocutory order "may only be amended to account for '(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice.'" *Taylor v. Edwards*, Civil No. RDB-19-1404, 2019 WL 7037957, at *1 (D. Md. Dec. 20, 2019). Although "the precise standard governing a motion for reconsideration of an interlocutory order is unclear, ... [c]ourts frequently look to the standards articulated in Federal Rules of Civil Procedure 59(e) and 60(b) for guidance in considering such motions." *Butler v. Directsat USA, LLC*, 307 F.R.D. 445, 449 (D. Md. 2015). Notably, however, "neither Rule 60(b) nor 59(e)" permits "reconsideration of already-argued issues." *Moore v. Lightstorm Ent.*, Case No. RWT-11- 3644, 2013 WL 4052813, at *4 (D. Md. Aug. 9, 2013); *see also Potter v. Potter*, 199 F.R.D. 550, 552 (D. Md. 2001) ("It is improper to use such a motion to ask the Court to rethink what the Court had already thought through — rightly or wrongly."). Accordingly, when a motion for reconsideration under Rule 54(b) "merely requests the district court to reconsider a legal issue or to change its mind, relief is not authorized." *Poling v. Marschik*, Case No. RWT 12-CV-454, 2015 WL 7076696, at *1 (D. Md. Nov. 13, 2015) (internal quotation omitted); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Case No. DKC 10-3517, 2011 WL 6837656, at *2 (D. Md. Dec. 28, 2011), *aff'd sub nom,* 526 F. App'x 255 (4th

Cir. 2013) (denying plaintiffs' motion for reconsideration because "they seek either to relitigate the same issues addressed by the opinion deciding the motions to dismiss or introduce new arguments that they failed to raise previously"). "Were it otherwise, then there would be no conclusion to motions practice, each motion becoming nothing more than the latest installment in a potentially endless serial that would exhaust the resources of the parties and the court — not to mention its patience." *Potter*, 199 F.R.D. at 553.

Although Plaintiff sets forth his disagreements with this Court's summary judgment analysis, those disagreements largely amount to his reassertion of his summary judgment arguments already rejected by this Court, sometimes with a slightly new twist. The Court therefore concludes that the rigors of the rules are not met, and no alteration or amendment is appropriate.

## III.    ANALYSIS

Plaintiff opens his motion by asking the Court to reconsider and vacate certain portions of the Court's summary judgment analysis. As an initial matter, the Court observes that this piece-by-piece approach often confuses the issues and, even if granted, would not warrant reconsideration of the Court's broader summary judgment conclusions. For the reasons described below, the Court finds that Plaintiff has failed to meet the high standard under Rule 54(b). *Tobacco Coop. Inc.*, 899 F.3d at 258.

### A.    Plaintiff Fails to Demonstrate Clear Error in the Court's Sham Affidavit Doctrine Analysis

Plaintiff first urges the Court to "reconsider its sham-affidavit ruling because the ruling rests on a factual premise contradicted by the existing record." (ECF No. 91). Relying on a 1984 case, Plaintiff urges that the sham affidavit doctrine applies only when an affidavit contradicts prior sworn testimony such that a bona fide inconsistency arises. As the Court recognized at the summary judgment stage, the sham affidavit doctrine provides that a plaintiff cannot "survive

summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 527 (D. Md. 2014) (quoting *Zimmerman v. Novartis Pharmaceuticals Corp.*, 287 F.R.D. 357, 362 (D. Md. 2012) (other citations omitted)). The Court recognized that Plaintiff's affidavit, which contradicted assertions in his deposition, violated the sham affidavit rule. *See* ECF No. 78-6 at 2 (denying that Plaintiff agreed to various provisions in the Rental Agreement and Insurance Addendum in contrast to his deposition testimony that he "would have signed" the Until 1206 Rental Agreement). The Court remains persuaded that the affidavit did flatly contradict portions of Plaintiff's sworn testimony based on the Court's review of the exhibits Plaintiff included in his summary judgment motion. Plaintiff's argument to the contrary is somewhat confusing, as a finding that he did sign the rental unit as he testified at his deposition supports the Court's summary judgment opinion in favor of Defendants. Of course, this analysis was only one portion of the Court's reasoning to grant summary judgment on his breach of contract claim—an analysis the Court applied in the first place because Plaintiff's affidavit denied agreeing to the Unit 1088 Agreement terms in his affidavit. (ECF No. 90 at 23-24).

Even assuming the Court's sham affidavit analysis amounted to clear error, and the Court finds it does not meet such a high standard, the breach of contract analysis relied not only on the sham affidavit doctrine, but also the lack of evidence showing that Defendants represented Unit 1088 would remain dry for the duration of Plaintiff's lease or that they had any prior knowledge of a pipe burse event. *See id.* Therefore, even if there is an error in the Court's sham affidavit analysis, an error does not warrant reconsideration of the Court's breach of contract conclusion as

a whole. Ultimately, the Court can find no basis upon which to grant the motion to reconsider due to the Court's sham affidavit doctrine reasoning.  Therefore, the Motion is DENIED on this issue.

### B.    Plaintiff's Argument to Reconsider the Court's Fraudulent Concealment Claim Reasoning Reiterates Arguments the Court Already Rejected

Plaintiff reiterates the arguments he raised at summary judgment, that he did not sign an Insurance Addendum for the amount of $5,000.00 and that Public Storage concealed the true liability cap from him upon signing the Insurance Addendum. (ECF No. 91 at 8).  The Court previously considered and rejected these arguments, finding that on the record before it, no reasonable jury could find that to be true because the undisputed evidence shows he was making payments for $5,000 in coverage every month for years and he signed the Insurance Addendum. The Court rejected as pure speculation Plaintiff's arguments that Public Storage acted with an intent to conceal or failed to disclose any information expressly written in the contract he signed. Additionally, Plaintiff's reliance on transplanted, out of context reasoning relevant to his summary judgment motion does not compel reconsideration of the Court's ruling on Defendant's summary judgment motion under an entirely different claim.[4] *See* (ECF No. 91 at 7).  The Court understands that Plaintiff disagrees with the Court's findings.  But, the Court has already considered and rejected the arguments Plaintiff reiterates now.  *Potter*, 199 F.R.D. at 553.  The present motion cannot resolve such disagreements.  *Id.*  Finding no clear error, the Court must DENY the Motion on this basis.

### C.    The Court Declines to Reconsider the Fraudulent Concealment Claim Reasoning Based on Plaintiff's Reiterated Theory that Md. Code Ann., Ins. § 10-806 Defines the Scope of his Fraudulent Concealment Claim.

---

[4] Plaintiff similarly refashions the argument that he did not agree to the terms in the form agreements.  (ECF No. 91 at 9).  The Court considered the record and rejected this argument as a matter of law based on the evidence showing he did sign the agreements.  *See generally* (ECF No. 90).

7

Plaintiff next asks for reconsideration because he "does not contend that Md. Code Ann., Ins. § 10-806…creates an independent private statutory damages cause of action" but argues "it defines the required disclosures." To be clear, the Court considered whether a private right of action exists under § 10-806 due to the lack of clarity in Plaintiff's briefing. (ECF No. 90 at 12) ("Brunenkant's opposition does not make clear whether he attempts to assert a unique claim under an assumed right of action under the Insurance Code…As such, the Court will address each in turn."). The Court concluded it does not. Plaintiff seeks reconsideration of the Court's fraudulent concealment analysis, urging that § 10-806 sets forth the operative standards.

However, Plaintiff's fraudulent concealment claim does not uniquely apply standards of his choosing. *See Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 138, 916 A.2d 257 (2007) (describing the elements of a fraudulent concealment claim). Either Plaintiff brought a fraudulent concealment claim under the common law, as the Court considered, or Plaintiff sought to bring a claim under the Insurance Code, something the Court concluded is not permitted. Even assuming § 10-806 defines the material facts that must be disclosed, the Court's reasoning that there is no evidence of an intent to deceive remains. To Plaintiff's argument that the Court's affirmative action analysis was also clear error, the Court has previously considered and rejected Plaintiff's theory of Defendant's duty. (ECF No. 90 at 15-16) (recognizing that Defendant's duty is one of contract). Even if Defendant had the duty Plaintiff claims, Plaintiff's claim still fails as a matter of law based on the failure to produce evidence of an intent to conceal or otherwise deceive. *Id.* Therefore, the demands of Rule 54(b) are not met.

Moreover, Plaintiff's new arguments that § 10-806 "renders [an] insurance addendum void, voidable, unenforceable, or incapable of supporting [Public Storage's] coverage defense[]" and "as a source of the required disclosures, the standard for materiality, and the statutory condition

governing whether a storage insurance sale was validly made or may be enforced against the occupant" were not properly raised at the summary judgment stage and will not be considered. Therefore, the Court finds that Plaintiff has not met the high bar for reconsideration, and the Motion is DENIED on this issue.

**D.      Plaintiff's Arguments to Reconsider the Court's Breach of Contract Claim Reasoning are Mere Reiterations of Arguments the Court Already Rejected**

Plaintiff's breach of contract claim is solely based on whether Public Storage breached the Unit 1088 Rental Agreement by failing to disclose defects in its water systems and represented that the Unit would remain "dry" as a condition of the agreement. The Court determined that there was no evidence that Public Storage knew of any potential water damage, as no pipe burst even had occurred at the Facility before, and there was no evidence that Public Storage represented the Unit would remain dry for the duration of the Agreement. Relying on the language of the agreement a reasonable jury could only find that he signed, the Court concluded that his agreement precluded his breach of contract claim as a matter of law. (ECF No. 90 at 22-23).

Plaintiff reiterates his arguments the Court previously rejected concerning the Rental Agreement's legal effect and conflates the analysis concerning the Insurance Addendum with the analysis concerning the Rental Agreement. On the breach of contract claim, the Court considered the unambiguous language of the Rental Agreement and concluded that (1) Public Storage will not be responsible for any damage, (2) the contract is the entire agreement, and (3) there exist no additional "representations, warranties, or agreements not fully set forth in this Rental Agreement…" (ECF No. 90 at 22-23). Again, Plaintiff transplants the Court's reasoning under his motion for summary judgment and argues that the Court's denial of his summary judgment motion warrants reconsideration of the Court's opinion granting Defendant's summary judgment motion. Yet, the reasoning for the as-is condition breach of contract claim under the Rental

Agreement was distinct from the reasoning under Plaintiff's request for a finding that the Insurance Addendum for Unit 1088 was unenforceable. Noting minor differences in the evidence, the Court denied Plaintiff's motion for summary judgment.

To the extent that Plaintiff reiterates his disagreement with the Court's reasoning, the Court can find no clear error. Thus, Plaintiff's motion is DENIED on this basis.

### E.     The Court Declines to Certify Plaintiff's Questions to the Supreme Court of Maryland

The Maryland Uniform Certification of Questions of Law Act provides that the Supreme Court of Maryland may address "question[s] of law certified to it by a court of the United States ... if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute." Md. Code Ann., Cts. & Jud. Proc. § 12-603. A referring Court must consider whether the question is "determinative of an issue in pending litigation" and whether there is a "controlling appellate decision, constitution provision, or statute of [Maryland]." *Antonio v. SSA Sec, Inc*., 749 F.3d 227, 234 (4th Cir. 2014). (quoting Md. Code Ann., Cts. & Jud. Proc. § 12-603).

As the Court reasoned at the summary judgment stage, Maryland Insurance Code violations are resolved through administrative enforcement. As the Court previously reasoned, in *Carter v. Huntington Title & Escrow, LLC*, 420 Md. 605, 624, 24 A.3d 722 (2011), the Supreme Court of Maryland concluded that the Insurance Article imbues the Maryland Insurance Administration with exclusive jurisdiction over purely statutory claims, such as the one at issue there. To that end, the court noted, "we find indicia suggesting that the Legislature evinced a preference for primary jurisdiction as to [purely statutory claims]." *Id.* at 626. The court also noted certain relevant penalty provisions support such a conclusion, including those that begin with phrases like "[i]f the Commissioner finds" or "[i]f the Commissioner believes." *Id.* The court held that such phrases

10

imply that the Maryland Insurance Administration, and not the courts, "should take the first cut at such claims." *Id.*

Finding *Carter* dispositive, this Court reasoned that § 10-806's remedy provision states, "[t]he Commissioner may suspend, revoke, or refuse to renew a limited lines license issued under this subtitle. . . if the self-storage producer . . . failed to provide the disclosures required under § 10-806 of this subtitle[.]" *See* Md. Code. Ann. Ins. § 10-810(3).  As such, the Court concluded that the *Carter* holding compelled a finding that the Maryland Insurance Administration maintains control over such claims. Therefore, controlling Maryland law already has answered Plaintiff's questions, and this area of law cannot properly be considered unsettled.  The Court therefore declines to certify questions to the Supreme Court of Maryland.

**F.      Plaintiff Did Not Plead a Survivable Claim for Recovery of Lease Payments**

Plaintiff next urges the Court to reconsider its ruling that he has not pled a breach of contract claim to recover lease payments.  In support of his argument for reconsideration, Plaintiff relies on the Court's Opinion and Order denying the motion to strike his reply-counterclaim. At summary judgment the Court considered the argument he presented at that juncture, which advanced a theory of contract recovery based on a purported surrender of his unit while continuing to pay Public Storage despite their refusal to return his possessions into his custody. (ECF No. 90 at 27).  The Court rejected that argument, reasoning that the reply-counterclaim alleged a violation of an as-is dry condition for which there was insufficient evidence (and therefore no recovery) as a matter of law.  The Court also rejected the other theory he advanced on the basis that he did not plead a different theory of contract liability for the sake of completeness. Thorough review of the Court's analysis, Reply-Counterclaim reasoning, and the arguments presented support the Court's summary judgment conclusion.  Therefore, the Court can find no clear error such that reconsideration would be proper.

To Plaintiff's request for a clarification that the dismissal of his reply-counterclaim does not preclude him from asserting the same facts defensively against Public Storage's claim for rent, Plaintiff is bound by the defenses contained in his Answer to the Counterclaim (ECF No. 45). To the extent that Plaintiff advances a defense theory consistent with the defenses asserted in his Answer, he is free to do so.

Plaintiff's Motion for Reconsideration is therefore DENIED.

## IV.   CONCLUSION

For the foregoing reasons, it is this 17th day of June 2026 ORDERED that Plaintiff's Motion to Reconsider (ECF No. 91) is DENIED.

Date: <u>June 17, 2026</u>

/s/
J. Mark Coulson
United States Magistrate Judge

12